UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA ANN LEWIS,<br><br>             Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>             Defendant. | Case No. ED CV 15-299-SP<br><br>MEMORANDUM OPINION AND ORDER |

### I.

### **INTRODUCTION**

On February 19, 2015, plaintiff Sylvia Ann Lewis filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the

Case 5:15-cv-00299-SP Document 21 Filed 05/25/16 Page 2 of 12 Page ID #:954

Administrative Law Judge ("ALJ") properly considered plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-10.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted plaintiff's credibility. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-four years old on her alleged disability onset date, attended some college. AR at 31, 155, 166, 539-40. Plaintiff has past relevant work as a shipping checker and mail handler. *Id*. at 558-59.

Plaintiff filed four prior applications for DIB and/or SSI. *Id*. at 156-57. The first two applications, filed in 1993 and 1994, were denied initially or upon reconsideration. *Id*. Plaintiff filed the third and fourth applications in 1995 and 2001, which were denied after a hearing. *Id*. at 58, 156.

On November 18, 2009, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of December 24, 2008 due to diabetes, neuropathy, carpal tunnel, and leg pain. *Id*. at 144, 148, 155, 160. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 68-72, 75-80.

On April 25, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. *Id*. at 23-53. The ALJ also heard testimony from a medical expert and a vocational expert. *Id*. at 32-38, 48-52. On May 20, 2011, the ALJ denied plaintiff's claim for benefits. *Id*. at 12-19. Plaintiff filed a request for review, which was denied by the Appeals Council on August 16, 2012. *Id*. at 1-3.

Plaintiff filed a complaint in this court on October 11, 2012. On May 28, 2013, based upon the parties' Stipulation to Voluntary Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g) ("Stipulation"), this court ordered that the complaint be remanded for further proceedings consistent with the terms of the Stipulation.

In accordance with the order remanding the case, on July 23, 2013, the Appeals Council vacated the May 2011 decision and remanded the case. *Id*. at 594-97. The Appeals Council ordered the ALJ to update the treatment evidence, apply the presumption of continuing non-disability pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), and proceed again through steps two through five. *Id*. at 595-96. The Appeals Council also ordered ALJ to articulate how she has evaluated plaintiff's credibility, identify which, if any, subjective symptoms are not credible, and explain why they are not credible. *Id*. at 596.

On April 30, 2014, plaintiff, represented by counsel, and a vocational expert testified at a hearing before a different ALJ. *Id*. at 536-52. On July 3, 2014, the ALJ again denied plaintiff's claim for benefits. *Id*. at 483-96.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 24, 2008, the alleged disability onset date. *Id*. at 487.

At step two, the ALJ found plaintiff suffered from the following severe impairments: diabetes mellitus, Type II; diabetic peripheral neuropathy affecting the feet; right eye diabetic retinopathy; bilateral carpel tunnel syndrome; history of decreased range of motion in the shoulder; osteoarthritis in the bilateral knees; osteoarthritis of the bilateral hips; hypertension; cervicalgia; degenerative disc disease and degenerative joint disease of the lumbar spine; right-sided sciatica; and status-post right eye surgery. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether


individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 488-89.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform less than the full range of light work. *Id*. at 489. The ALJ limited plaintiff to: lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; stand/walk for six hours out of an eight-hour workday, thirty minutes at a time, broken down to three hours of walking and three hours of standing; sit six hours out of an eight-hour workday, one hour at a time; frequent pushing or pulling; occasional postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent bilateral handling and fingering. *Id*. In addition, the ALJ precluded plaintiff from ladders, rope, scaffolds, work environments requiring visual acuity for safety, work requiring precise depth or binocular vision; and concentrated hazards such as machinery or heights. *Id*.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a shipping checker and mail handler. *Id.* at 494.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including order clerk, charge account clerk, and document preparer/scan technician. *Id*. at 495. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 496.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 442-44. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

1992)).

## IV.

## **DISCUSSION**

Plaintiff argues the ALJ failed to properly consider her credibility. P. Mem. at 3-10. Specifically, plaintiff contends the ALJ failed to identify which statements he accepted and rejected, and also failed to state clear and convincing reasons for finding her less credible. *Id.*

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[2] *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course

---

[2] Defendant argues the ALJ was only required to provide specific reasons supported by substantial evidence, rather than clear and convincing reasons, as the clear and convincing standard is contrary to 42 U.S.C. § 405(g) and SSR 96-7p. D. Mem. at 3. But as defendant acknowledges, the Ninth Circuit has explicitly rejected that argument. *See Burrell*, 775 F.3d at 1136-37. Accordingly, the court applies the clear and convincing standard.

6

of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The lack of objective medical evidence to support allegations of limitations is also a factor that may be considered when evaluating credibility, but it may not be the only factor considered. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

Here, at the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 490. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility.

The ALJ provided three reasons for discounting plaintiff's credibility: (1) her alleged limitations were inconsistent with her activities of daily living; (2) she stopped working because she was laid off; and (3) the objective medical evidence did not support her alleged symptoms. *Id.* at 490. These reasons are largely clear and convincing and supported by substantial evidence.

As an initial matter, contrary to plaintiff's contention, the ALJ identified which statements he rejected. The ALJ stated that he did not find plaintiff's allegations at the hearing and in her exertional questionnaire regarding the intensity, persistence, and limiting effects of her symptoms to be fully credible. *Id*. The ALJ noted plaintiff testified at the hearing that, due to her impairments, she was unable to work. *Id.*; *see id.* at 543. The ALJ recounted that plaintiff testified and reported she was disabled due to "symptoms of pain, neuropathy in her feet and legs, sciatica, dry mouth, shakiness, frequent use of the restroom, and

poor vision"; and "further claimed she was limited in her ability to sit more than 20 minutes, stand more than 15 minutes, walk more than a few feet, perform overhead movements, gripping, grasping, reaching behind her, and lifting more than five pounds." *Id.* at 490; *see id.* at 168-71, 541-57. In addition to identifying these reported symptoms generally and noting he found them not fully credible, the ALJ specifically discounted the limiting effects of many of these alleged symptoms in giving his reasons for finding plaintiff less than fully credible, as set forth below.

The ALJ's first reason for discounting plaintiff's credibility was that her alleged limitations were inconsistent with her activities of daily living. *Id.* at 490. Plaintiff testified she could do the dishes, make the bed, and microwave food. *See id.* at 540. In her exertional questionnaire, plaintiff stated she made her bed, wiped the table, and microwaved food, but she required help with her personal hygiene and could walk for about three to five minutes at a time. *See id.* at 168-69. In discounting plaintiff's credibility, the ALJ relied on a treatment note, dated June 19, 2012, in which plaintiff reported she was able to independently bathe, dress, use the restroom, ambulate, and feed herself. *Id.* at 490; *see id.* at 677. A separate treatment note reflected the same. *See id.* at 667. The ALJ found these tasks involved grasping, reaching behind, and overhead reaching, and were therefore were inconsistent with plaintiff's testimony. *See id.* at 490. The ability to feed herself, bathe, dress, and use the restroom as reported in the treatment note is not inconsistent with plaintiff's testimony that she microwaved food and did light chores. But the treatment note indicating she could independently bathe and dress and use the restroom is inconsistent with her statement in the questionnaire that she required help with her personal hygiene. *See id.* at 168, 677. In addition, plaintiff testified her pain and limitations were so severe that she had difficulty lifting her arms to wash her hair and was sometimes unable even to hold a cup,

and that she was unable to reach behind herself or above her shoulders. *Id.* at 546-48. As such, the ALJ's finding that plaintiff's daily activities were inconsistent with the extent of her alleged limitations is a partially clear and convincing reason for discounting her credibility.

The ALJ's second reason for finding plaintiff less credible – that her alleged limitations were not what caused her to stop work – was clear and convincing and supported by substantial evidence. *See id*. at 490; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (as amended) (the fact that claimant stopped working because he was laid off rather than due to his injuries was a sufficient reason for disregarding his testimony); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (claimant was not credible, in part, because she did not lose her jobs because of her pain). As plaintiff testified at the April 2011 hearing, she stopped working on December 23, 2008 because she was laid off. AR at 27-28. Indeed, plaintiff testified that she indicated she was willing and able to work in her application for unemployment benefits. *Id.* at 28. Therefore, although plaintiff alleged at the April 2014 hearing that she was unable to return to work due to her severe pain and other impairments (*id.* at 543), the ALJ reasonably concluded that since she stopped work in December 2008 because the facility that employed her closed, "[t]his raises the issue as to whether [plaintiff's] ongoing unemployment is the result of her alleged impairments or an unrelated reason, particularly given [plaintiff's] alleged onset date is the same month and year she lost employment." *Id.* at 490.

The ALJ's final reason for finding plaintiff less than fully credible – and the reason the ALJ stated was the most important (*id.* at 490) – was that the objective medical evidence did not support her alleged limitations. *Id*. at 490-92. Substantial evidence supports the ALJ's finding. As the ALJ noted, although the objective medical evidence indicated plaintiff suffered from multiple impairments

including hypertension and diabetes, the evidence did not support limitations as severe as plaintiff alleged. *See, e.g.*, AR at 225, 233.

The ALJ noted the record reflected that plaintiff's diabetes was not under control and she suffered from various complications of diabetes, but there was no evidence of end-organ damage. *Id*. at 490-91. As plaintiff alleged, she suffered from neuropathy in her lower extremities. Testing revealed early signs of distal diabetic vascular disease, but plaintiff did not appear to suffer limiting complications from it at the time. *Id*. at 792. The objective evidence showed decreased sensation in the feet, wound healing in the foot was likely in the event of wound, mild bilateral osteoarthritis of the hips, enthesopathy of the iliac wings, mild bilateral osteoarthritis of the knees, and tenderness. *See id.* at 658, 733, 823, 867. Plaintiff also had full range of motion in the knee, ankle, and hips, with only pain in abduction in hips and mild crepitus in knees. *See id.* at 657, 824, 867. As such, the ALJ found that "despite [plaintiff's] complaints of pain and numbness in her feet and legs, physical exam findings were largely within normal limits aside from decreased sensation in her feet." *Id.* at 491. Because the objective findings were primarily normal or mild, substantial evidence supports the ALJ's finding that plaintiff's limitations relating to her lower extremities were not as severe as alleged.

Plaintiff also cited her poor vision as a reason she could not work, claiming she was unable even to read. *Id*. at 490, 553-55. Plaintiff suffered from various vision problems including diplopia, double vision, blurry vision, uveitis, diabetic retinopathy, and cataracts. *See, e.g., id*. at 223-24, 433, 690. Plaintiff had cataract surgery in 2011 and pars plana vitrectomy, membrane peel, and surgery for repair of retinol detachment in 2013 . *Id*. at 433, 690. The consultative examiner reviewed these records and performed a vision exam on plaintiff and found that these vision problems resulted in decreased visual acuity but did not preclude

1  plaintiff from work. *Id*. at 659. Consequently, the ALJ found plaintiff "would
2  have visual acuity related limitations but not that would preclude her from all
3  work." *Id.* at 491.
4       As for plaintiff's alleged pain and upper extremity impairments, plaintiff
5  consistently sought treatment for pain in her back and shoulders. Prior to the
6  alleged onset date, in 2006 and 2007, plaintiff underwent surgery on both
7  shoulders. *Id*. at 297, 317. Plaintiff was working at the time of the surgeries and
8  nothing in the record suggests that plaintiff's shoulder pain was worse after the
9  surgery. Images taken after the alleged onset date revealed mild or minimal
10 findings. Images from 2009 reflect normal findings for the elbows, probable
11 minimal osteoarthritis in the hands, and mild degenerative joint disease or
12 degenerative changes in the shoulders. *Id.* at 229-32, 238. Images from 2010
13 reflect normal findings for the shoulders. *Id*. at 288. Images from 2011 show
14 minimal degenerative disk disease at L5-S1 with 10 mm right L5-S1 foraminal
15 tear and mild degenerative facet joint hypertrophy in the lower lumbar spine. *Id*.
16 at 835. Images from 2013 also reflect normal findings in the back. *Id*. at 735.
17 Plaintiff's treatment notes indicate that, at times, plaintiff had a limited range of
18 motion, tenderness, and adhesive capsilitis in her upper extremities. *See, e.g., id*.
19 at 286, 289. But on other occasions, plaintiff had full range of motion in her neck
20 and wrist. *See, e.g., id*. at 289, 816-17. Physicians also reported that plaintiff had
21 normal ambulation on several occasions. *See id*. at 245, 828. The ALJ cited this
22 medical evidence in determining plaintiff's "alleged upper extremity impairments
23 would not preclude her from all work," and her shoulder and back limitations were
24 consistent with plaintiff's determined RFC and not total disability. *Id.* at 491-92.
25      Although the evidence clearly reflects that plaintiff had limitations due to
26 vision problems, neuropathy, and shoulder, leg, back, and foot pain, the evidence
27 reasonably supports the ALJ's finding that the objective evidence did not support
28

the severe limitations alleged by plaintiff. As such, the reviewing court may not substitute its judgment for that of the ALJ. *See Aukland*, 257 F.3d at 1035.

In sum, the ALJ cited multiple clear and convincing reasons supported by substantial evidence for finding plaintiff less than fully credible.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: May 25, 2016

SHERI PYM
United States Magistrate Judge